# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT LESTER,

        Petitioner,

vs.                                                                 Civil No. 08-554 JH/RHS

NEW MEXICO DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court on Petitioner Robert Lester's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") **[Doc. No. 1]**, filed June 10, 2008.  Petitioner is proceeding *pro se* and *in forma pauperis*.  Respondents state that Petitioner "is in the lawful custody of Respondent New Mexico Department of Corrections, Probation and Parole" pursuant to the Judgment, Partially Suspended Sentence and Commitment to Metropolitan Detention Center ("Judgment") filed in the Second Judicial District Court, County of Bernalillo, State of New Mexico on February 27, 2006.  (Answer at 1 ¶ 1, filed Aug. 20, 2008 **[Doc. No. 9]** and Ex. A, attached to Answer[1]).

    2.  Following a jury trial, Petitioner was convicted of:  (1) Battery upon a Peace Officer, (2) Leaving the Scene of an Accident (Great Bodily harm or Death), (3) Reckless Driving, and (4) Resisting, Evading or Obstructing an Officer.  (See Judgment at 1-2, Ex. A).  Following his convictions, the state district court sentenced Petitioner to a total term of imprisonment of three years, suspending all but five days.  (See id.).  Petitioner was further ordered to complete

---

[1]Unless otherwise indicated, all exhibits are attached to Respondents' Answer.

approximately three years of supervised probation and pay $50,854.72 in restitution.  (See id. at 2-3).

**Background[2]**

3.  The "battery," "leaving the scene" and "reckless driving" incidents occurred at the Albuquerque airport on August 5, 2004.  On that day, Catherine Novak ("Novak"), of the Albuquerque Aviation Police Department, was patrolling the airport's lower level.  When she saw a blue sport utility vehicle park, she told the driver (Lester) that he had to keep moving.  Lester left and returned about five minutes later and Novak again told Lester to keep moving.  When Lester returned a third time and stopped his vehicle, Novak approached to identify the driver, obtain his license, and find out why he would not follow her directions to keep moving.

4.  Novak approached the driver's side window and placed her hand on the vehicle door.  When Novak requested Lester's license, registration and proof of insurance, she thought he responded "Hell no."  As Lester started to drive away, Novak yelled at him to stop, but he continued.  Novak said when the vehicle started moving, her reaction was to put her right hand up because she saw the door frame coming at her.  When Novak released her "reactive" grip, she fell to the ground.  Novak did not turn on her belt recorder because the situation escalated so quickly.

5.  After the fall, Novak's right arm was bleeding, there was a bruise above her right eye and she was taken by ambulance to the hospital.  Eventually, Novak required shoulder surgery and was unable to return to full time patrol duties until January 2005.

---

[2]This information is excerpted from the background section of the Memorandum Opinion, filed March 9, 2008 in the Court of Appeals of the State of New Mexico.  (See Ex. O at 2-6).

6.  Robert Leonard ("Leonard"), a cab driver, was parked at the lower level of the airport that day.  Leonard testified that he heard screams, saw a person on the ground, and a blue car speeding away "with total disregard — at a high rate of speed."  According to Leonard, the car was "weaving all over" and he had to jump on his cab when it came at him.  Leonard had never seen a car go so fast through the airport.  A bystander got the license plate number and called 911.

7.  Lester testified that Novak banged on his car, said she had to see his license, and he responded "No, you don't."  Lester claimed he did not know that Novak would grab onto his car and that it was "insane" for her to do so.  Lester claimed he did not hear Novak yell for him to stop and did not see her holding onto his window.  Lester testified that after the incident with Novak, he did not want to go back to the airport.  However, he had to pick up his wife and son, so he parked his car and took a parking shuttle.

8.  The "resisting" incident occurred later that night at Lester's home.  Officer Zumwalt ("Zumwalt"), an Albuquerque Police Department officer, testified that she responded to an attempt-to-locate bulletin regarding a vehicle involved in a hit-and-run accident at the airport.  Zumwalt was informed that a pedestrian was hit by a vehicle that Lester was driving.  Zumwalt went to Lester's home and made contact with him.

9.  Officer Montano testified that he was called to the scene by Zumwalt and saw the car described in the attempt-to-locate bulletin in the driveway.  Montano observed Lester talking with Zumwalt and another officer at the front door, and noted that Lester was "noncompliant" with her direction.  At some point, she told Lester he was under arrest.

10.  When Lester asked if he could go inside to put on some clothes, Zumwalt told him he could, but since he was under arrest, would have to have a police escort.  Lester "stated that

3

we would not be going inside his residence, and slammed the front door on our faces." Montano

testified that he placed his foot inside the door to prevent the door from closing, placed Lester in

"the wrist-lock escort position" and escorted him outside. Montano agreed that he reached

across the threshold into the house to grab Lester.

**Petitioner's Argument**

11. Petitioner raises five grounds in his Petition:

(1)     denial of the right to a speedy trial (Sixth Amendment);

(2)     the evidence was insufficient to support his convictions;

(3)     the trial judge demonstrated bias;

(4)     denial of the right to present a defense (evidence/witness); and

(5)     multiple due process violations (Fourth, Fifth, Fourteenth Amendments).[3]

12. Respondents concede that all of Petitioner's grounds have been exhausted in state

court, except for the issue of the $ 10,000 bond raised in ground three. However, this issue was

addressed on direct review by the Court of Appeals of the State of New Mexico ("NMCA") in its

ruling on Petitioner's judicial bias argument. (See Memorandum Opinion at 14-15, Ex. O).

Petitioner appealed the NMCA's decision, including its ruling on judicial bias, to the Supreme

Court of the State of New Mexico ("NMSC"). (See Defendant's Petition for a Writ of Certiorari

to the New Mexico Court of Appeals, Ex. P). The NMSC denied the petition for a writ of

certiorari on May 30, 2008. (See Order, Ex. Q). Thus, it appears that Petitioner's argument

regarding the imposition of a $ 10,000 bond has been exhausted in state court.

---

[3]Under this ground, Petitioner lists: arrested without warrant; right to speedy trial denied; right to present evidence and testimony on my behalf; and right to see timely evidence from opposing party such as medical record. (Petition at 11b [Petitioner's numbering]; 12 [CM/ECF document numbering]).

*Standard of Review*

13.   "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim - - (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States;[4] or (2) resulted in a decision that was based on an *unreasonable determination of the facts* in light of the evidence presented in the State court proceeding[5]."  <u>House v. Hatch</u>, 527 F.3d 1010, 1015 (10th Cir. 2008) (emphasis in original) (citing 28 U.S.C. § 2254(d)).  Because the state appellate court articulated its reasoning for denying relief on the merits in each of the grounds raised by Petitioner on direct appeal, a review of the entire Record Proper was not required.

**First Ground - speedy trial**

14.   Petitioner claims that he was denied his right to a speedy trial.  Petitioner also contends that his counsel waived his right without his knowledge or consent.  In reviewing Petitioner's claim on direct appeal, the NMCA considered the "the length of delay, the reasons for the delay, the assertion of the right, and prejudice to the defendant" as directed in <u>Salandre v. State</u>, 111 N.M. 422, 425, 806 P.2d 562, 565 (1991)  These are the same factors set forth in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972) for evaluating speedy trial cases.

*Factors 1 and 2:  Length of delay, Assertion of the right*

---

[4]"The absence of clearly established federal law is dispositive under § 2254(d)(1)." <u>House</u>, 527 F.3d at 1018 (citing <u>Carey v. Musladin</u>, 549 U.S. 70 (2006)).

[5]"A federal habeas court must presume the state court's factual findings to be correct unless the petitioner rebuts the presumption with clear and convincing evidence."  <u>House</u>, 527 F.3d at 1019 (citing § 2254(e)(1)).

15.   The NMCA found that the length of delay (of approximately fifteen months) between Petitioner's arrest on August 6, 2004 and trial on November 18, 2005 was presumptively prejudicial.  In so finding, the NMCA noted that Petitioner's "voluminous and poorly crafted pro se pleadings made the case one of intermediate complexity, requiring more effort."  (Ex. O at 16 (citation omitted)).  As to the second factor, the NMCA noted that shortly before trial began, Petitioner "told the court he was upset that [his attorney] Beauvais had stipulated to an extension of time under Rule 5-604 NMRA without his consent."  (Ex. O at 17).  The NMCA found no support for Petitioner's claim that he repeatedly asserted his speedy trial rights, and concluded that "on these facts, [Petitioner's] assertion of the right is entitled to little weight in the analysis."  (Ex. O at 17).

*Factor 3:  Reasons for the delay*

16.   The NMCA found that the reasons for the delay included Petitioner's motion to vacate the August 2005 trial setting, a stipulation to a continuance to November 28, 2005,[6] and a stipulation to an extension of time under Rule 5-604.[7]  (Ex. O at 18).  The NMCA noted that Petitioner "did so to accommodate his then-trial attorney's schedule."  (Ex. O at 18).  The NMCA rejected Petitioner's argument that because he did not know or approve of his trial counsel's agreement to an extension, the time should not count against him.

17.   The NMCA stated that Petitioner provided no authority for the proposition that a defendant must personally approve of a Rule 5-604 extension.  Moreover, the NMCA apparently

---

[6]The NMCA previously indicated that trial commenced on November 18, 2005.  (See Ex. O at 16).

[7]The stipulation to an extension of time under Rule 5-604 apparently resulted in a delay of approximately three months.  (Ex. O at 18-19).

agreed that while some rights are so personal to the defendant (e.g., right to counsel, right to trial, right to plead guilty) that they require further inquiry into the defendant's decision-making process or can only be waived by the defendant, "[o]ther rights generally pertaining to the conduct of trial may be waived through counsel and without an inquiry on the record into the validity of the waiver."  (Ex. O at 19-20 (quoting <u>State v. Singleton</u>, 2001-NMCA-054, ¶ 12, 130 N.M. 583, 28 P.3d 1124)) (brackets in original).  Regarding this factor, the NMCA concluded that "Defendant contributed to the delay . . . ."  (Ex. O at 22).

*Factor 4: Prejudice*

18.  Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Th[e] [United States Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  <u>Barker</u>, 407 U.S. at 532 (footnote omitted).

19.  The NMCA noted that "Defendant appears to have been released on bond for virtually all of the period between arrest and trial."  (Ex. O at 21).  The NMCA also found Petitioner's "assertion of anxiety to be insufficient to establish prejudice."  (Ex. O at 21 (citing <u>State v. Laney</u>, 2003-NMCA-144, ¶ 29)).[8]  Finally, the NMCA found that Petitioner "has not pointed to any tangible evidence that his defense was compromised by any delay and has not established any impairment to his defense."  (Ex. O at 21-22 (citation omitted)).

---

[8]In <u>Barker</u>, the Supreme Court concluded that "prejudice was minimal . . . . [despite the fact that defendant had been] living for over four years under a cloud of suspicion and anxiety." <u>Barker</u>, 407 U.S. at 514.

*Conclusion regarding Speedy Trial Claim*

20.  In considering the <u>Barker</u> factors, "together with such other circumstances as may be relevant" to a particular speedy trial claim, courts must "engage in a difficult and sensitive balancing process."  <u>Barker</u>, 407 U.S. at 533 (footnote omitted). After "considering all of the factors," the NMCA held "that no speedy trial violation has been established."  (Ex. O at 22). Having reviewed the state court's decision, the undersigned finds that the state court's application of the <u>Barker</u> test and conclusion that no speedy trial violation was established was neither contrary to, or involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.  Thus, Petitioner's claim based on this ground should be denied.

**Second Ground - sufficiency of the evidence**

21.  Authority in this Circuit is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)."  <u>Romano v. Gibson</u>, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001).  However, Petitioner's claim in this case fails under either standard.  In a sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979) (emphasis in original).

22.  Petitioner apparently claims that the evidence presented at trial was insufficient to convict him of "leaving the scene of an accident" or "resisting, evading or obstructing an officer."  (Petition at 8).  Applying the same standard set forth in <u>Jackson</u>, (albeit citing to <u>State v. Garcia</u>, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992)), the NMCA concluded that the

8

evidence presented was sufficient to support Petitioner's conviction of both crimes.

23. Petitioner argues that the evidence fails to support his conviction for "leaving the scene of an accident" because he was not aware that Novak had grabbed onto his car. However, the NMCA found that the evidence showing that Novak was "right in [Petitioner's] window when he ignored her authority and sped away . . . . suggest[ed] that [Petitioner] would have been aware that she was hanging onto his window frame . . . ." (Ex. O at 10). The NMCA correctly noted that the jury "was free to reject [Petitioner's] claim that he did not know what had happened." (Ex. O at 10 (citation omitted)).

24. Petitioner also argues that the evidence fails to support his conviction for "resisting, evading or obstructing an officer" because there was no warrant for his arrest. In addressing this argument on direct appeal, the NMCA found that "this case involv[ed] the prompt investigation of . . . a hit-and-run accident" and the investigating officers "had reasonable suspicion that [Petitioner] was the person who committed the offense at the time they saw the car with the matching license plate in his driveway and he answered the door." (Ex. O at 12). The NMCA concluded that when Petitioner closed the door on the officers under these circumstances, "he committed the offense of resisting an officer who was in the process of apprehending him for investigatory questioning on reasonable suspicion." (Ex. O at 13).[9] Thus, the NMCA implicitly concluded that the evidence would permit a rational trier of fact to find that Petitioner resisted, evaded or obstructed the officers while they were engaged in the lawful discharge of their duties.

25. Having reviewed the state court's decision, the undersigned finds that the state

_____

[9]This Court also notes that nothing in the applicable statute (NMSA § 30-22-1) requires that an arresting officer possess an arrest warrant in order to convict a defendant of violating the statute.

court's conclusion that sufficient evidence supports Petitioner's convictions of "leaving the scene of an accident" and "resisting, evading or obstructing an officer" was neither contrary to, or involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.  Thus, Petitioner's claim based on this ground should be denied.

**Third Ground - judicial bias**

26.  Petitioner contends that the state trial court demonstrated "bias and vindictiveness" by increasing his bond to $ 10,000 following his convictions.  (Petition at 9).   To demonstrate judicial bias, Petitioner "must show either: (1) actual bias; or (2) that circumstances were such that an appearance of bias created a conclusive presumption of actual bias." Wesley v. Snedeker, 284 Fed.Appx. 521, 525 (10th Cir. Jul. 1, 2008) (quoting Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994)) (internal quotation marks omitted) (not selected for publication).  The mere fact that Petitioner did not prevail at trial does not demonstrate bias.  "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Wesley, 284 Fed.Appx. at 525 (citations omitted).

27.  The state appellate court considered and rejected Petitioner's claim of judicial bias.  After reviewing the trial transcript, the NMCA found that Petitioner, acting *pro se*, "was constantly disrespectful to the court" and refused to follow its rulings.  (Ex.O at 14).  Far from finding bias, the NMCA concluded that the trial court "displayed remarkable patience in dealing with Defendant, whose obstinate and discourteous behavior was remarkable for its constancy and severity."  (Ex. O at 14).  The NMCA also noted that an increase in Petitioner's bond was an appropriate exercise of judicial discretion following Petitioner's conviction of a felony.  (Ex. O at 14-15 (citing State v. Cebada, 84 N.M. 306, 308, 502 P.2d 409, 411 (Ct.App. 1972)).

28.   Having reviewed its findings and conclusions, this Court finds no error in the state court's decision to reject Petitioner's claim of improper bias on the part of the trial court.  Thus, Petitioner's claim based on this ground should be denied.

**Fourth Ground - right to present a defense**

29.   Petitioner alleges that the trial court "refused to accept my evidence . . . . [and] denied my only witness."  (Petition at 11a).  "The rule is well established that state court rulings on the admissibility of evidence may not be questioned in a federal habeas corpus proceeding, unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  Wauqua v. Cowley, 1 F.3d 1250, 1993 WL 279768, at **3 (10th Cir. Jul 22, 1993) (citing Gillihan v. Rodriguez, 551 F.2d 1182, 1192-1193 (10th Cir. 1977); other citation omitted)) (unpublished table opinion).

30.   The NMCA rejected Petitioner's argument that the trial court erred in not allowing him to call his prior defense attorney, Robert Beauvais, as a witness.  The NMCA found that Petitioner's refusal to make an offer of proof regarding Mr. Beauvais' testimony "justifies rejecting Defendant's argument."  (Ex. O at 22).  The NMCA further found that Petitioner's later-expressed reason for calling Mr. Beauvais indicated that Mr. Beauvais' testimony was irrelevant, and thus inadmissible.  (Ex. O at 23 (stating that Petitioner "wanted to call Beauvais to support Defendant's assertions that he received ineffective assistance of counsel")).

31.   This Court finds no error with the state court's findings and conclusion regarding Petitioner's claim that he was denied the right to present a defense.  Accordingly, Petitioner's claim on this ground should be denied.

**Fifth Ground - multiple due process violations**

32.   Petitioner asserts four allegations of error in this ground.  However, two of these

11

allegations (right to speedy trial and right to present evidence and testimony) have been addressed in grounds one and four above.  In his remaining allegations, Petitioner asserts that he was (1) "arrested without [a] warrant" and (2) denied his "right to see timely evidence from [the] opposing party."  (Petition at 11b).

*Petitioner's Arrest*

33.  Petitioner apparently contends that he was unlawfully seized in violation of the Fourth Amendment because he was arrested without a warrant.  In addressing his claim of "illegal arrest" on direct appeal, the NMCA noted that before trial, Petitioner moved to dismiss the charges against him on the same basis.  The NMCA concluded that Petitioner's "pretrial claim that the charges should have been dismissed on account of the alleged illegal arrest is without merit."  (Ex. O at 28 (citing State v. Ramirez, 78 N.M. 418, 420, 432 P.2d 262, 264 (1967)).

34.  The United States Supreme Court held "that Fourth Amendment claims were not cognizable in § 2254 state habeas proceedings when the state had provided a full and fair opportunity to litigate the issue."  United States v. Cook, 997 F.2d 1312, 1317 (10th 1993) (citing Stone v. Powell, 428 U.S. 465 (1976)).  Here, it appears that the state court has afforded Petitioner a full and fair opportunity to litigate his "illegal arrest" claim.  Moreover, the Court notes that an "illegal arrest does not void a conviction, nor is it grounds for a collateral attack upon a judgment of conviction."  United States v. Adams, 422 F.2d 515, 517 (10th Cir. 1970) (quoting Roddy v. United States, 296 F.2d 9, 10 (10th Cir. 1961)) (internal quotation marks omitted).  Accordingly, relief based on this ground should be denied.

*Right to See Timely Evidence*

35.  Petitioner appears to assert an argument previously raised on direct appeal that his

12

due process rights were violated when the prosecution withheld certain medical evidence until the day of trial.  (See Docketing Statement at 10, Ex. H).  The NMCA found that the records "do not appear to be exculpatory, as they establish that the officer required shoulder surgery . . . ." (Notice Proposed Summary Disposition at 11, Ex. I).  The NMCA concluded that Petitioner did not meet his burden of showing that the prosecution failed to disclose exculpatory evidence.

36.  To prove a Brady violation, Petitioner must establish that the prosecution suppressed favorable evidence, which is either exculpatory or impeaching, and that the evidence is material. Strickler v. Greene, 527 U.S. 263, 281-82 (1999) (cited in Dunn v. Scott, 117 Fed.Appx. 49, 52 (10th Cir. Nov. 16, 2004) (not selected for publication)).  Petitioner is entitled to habeas relief only if he can prove that the NMCA's resolution of his Brady claim "was contrary to, or involved an unreasonable application of, clearly established" federal law.

37.  In this case, it does not appear that the prosecution "suppressed" evidence, insofar as Petitioner received the evidence the day of trial.  Moreover, "Tenth Circuit precedent generally holds that no Brady violation occurs if evidence is disclosed during the trial, as the materiality component is lacking."  Parson v. Keith, 2008 WL 2568385, at *5 n.4 (W.D.Okla. June 24, 2008) (not reported) (citations omitted).  In any event, the NMCA's decision that the medical record evidence was not exculpatory was neither contrary to, nor involved an unreasonable application of, clearly established federal law; nor was the NMCA's decision based on an unreasonable determination of the facts.  Thus, relief should be denied on this ground.

**Recommendation**

For all of the reasons set forth above, the Court respectfully recommends that Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody **[Doc. No. 1]**, be DENIED and that this civil proceeding be DISMISSED WITH PREJUDICE.  Within

fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.


_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE